Jeff P. Prostok
State Bar No. 16352500
Lynda L. Lankford
State Bar No. 11935020
Dylan T.F. Ross
State Bar No. 24104435
FORSHEY & PROSTOK, L.L.P.
777 Main Street, Suite 1290
Fort Worth, Texas 76102
Phone: (817) 877-8855
Fax: (817) 877-4151
jprostok@forsheyprostok.com
llankford@forsheyprostok.com
dross@forsheyprostok.com

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS-IN-POSSESSION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| In re:<br><br>NGV GLOBAL GROUP, INC.,<br><br>NATURAL GAS VEHICLES TEXAS, INC.<br><br>NATURAL GAS SUPPLY, LLC<br><br>NATURAL GAS LOGISTICS INC.<br><br>DEBTORS. | Chapter 11 Cases<br><br>Case No. 22- 42780<br><br>Case No. 22- 42781<br><br>Case No. 22- 42782<br><br>Case No. 22- 42783<br><br>(Motion for Joint Administration Pending)<br><br>**Emergency Hearing Requested** |

**DEBTORS' EMERGENCY MOTION FOR ORDER (I) AUTHORIZING THE DEBTORS
TO FUND INTERCOMPANY OBLIGATIONS FOR PRE-PETITION WAGES, PAYROLL
TAXES, AND OTHER EMPLOYEE-BENEFIT OBLIGATIONS, OR ALTERNATIVELY,
TO PAY OR HONOR PRE-PETITION OBLIGATIONS TO CERTAIN CRITICAL
VENDORS, AND (II) DIRECTING BANKS TO HONOR CHECKS ISSUED
TO FUND PRE-PETITION WAGES AND HOLDINGS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

NGV Global Group, Inc. ("NGV Global"), Natural Gas Vehicles Texas, Inc. ("NGV Texas"), Natural Gas Supply LLC ("NGS"), and Natural Gas Logistics, Inc. ("NGL", and collectively with NGV Global, NGV Texas, and NGS, the "Debtors" or the "Companies"), as debtors and debtors-in-possession, file this *Emergency Motion for Order (i) Authorizing the Debtors to Pay Pre-Petition Intercompany Obligations for Wages, Payroll Taxes, and Other Employee-Benefit Obligations or*

*Alternatively to Pay or Honor Pre-Petition Obligations to Certain Critical Vendors and (ii) Directing Banks to Honor Checks Issued to Pay Pre-Petition Wages and Holdings* (the "Motion"). In support of the Motion, the Debtors respectfully state as follows:

## I. SUMMARY

1. This Motion relates to funding of payroll and other employment related obligations earned by the Debtors' workforce. The employees making up the Debtors' workforce are not technically employed by any of the Debtor entities. All individuals are employed by an affiliated non-debtor entity, NGV Administrative and Human Resources, Inc. ("NGV HR"). The Debtors are responsible for funding payroll for the employees.

2. By this Motion, the Debtors seek the authority to provide funds to NGV HR for the following: (a) pre-petition wages, and salaries for the employees working for the Debtors in the total amount of approximately $451,917.00 in net wages, including any amounts owed for recently used holiday, vacation, or sick leave pay; (b) approximately $98,904.95 in payroll taxes; (c) approximately $3,170.70 in employee garnishment; (d) approximately $43,409 in health and welfare insurance premium; (e) approximately $39,238 in 401(k) plan deferral and matching; and (f) permit employees to use post-petition paid time off, holidays, and sick leave days that they accrued pre-petition (collectively, the "Pre-Petition Workforce Obligations"). The Debtors are additionally requesting authorization to use cash collateral for the purpose of funding the payroll expenses detailed herein by separate motion filed contemporaneously with this Motion.

3. The wages or salaries the Debtors seek to fund for the employees will not exceed the $13,650 cap under section 507(a)(4)(A) of the Bankruptcy Code for any individual employee.

## II. PRELIMINARY STATEMENT

4. The continued loyalty of a debtor's workforce is a necessary component of any successful reorganization. Under the best of circumstances, the filing of a chapter 11 petition is a stressful and uncertain time for a debtor's employees, most of whom are not familiar with the nuances that bankruptcy practitioners often take for granted. Such stress and uncertainty often

cause poor employee morale at a time when a debtor needs its workforce to be most loyal. Moreover, many employees live paycheck to paycheck and will suffer immediate adverse consequences if they fail to receive their full compensation.

5. Honoring the Pre-Petition Workforce Obligations will minimize the hardship that employees will certainly endure if compensation or benefits are interrupted and will provide comfort to the Debtors' workforce that the reasonable expectations of compensation for services will be met. As such, the Debtors seek to continue funding the Pre-Petition Workforce Obligations in the ordinary course.

6. The relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors. A failure by the Debtors to honor Pre-Petition Workforce Obligations to employees may result in the loss by the Debtors of their workforce at a time when they need them most. Consequently, it is essential to the Debtors' continued operations that employees receive assurance that they will receive all pre-petition compensation without interruption.

### III. JURISDICTION AND VENUE

7. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested are sections 105(a), 363(b), 507(a)(4), 507(a)(5), and 541(d) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003(b) and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### IV. PROCEDURAL BACKGROUND

8. On November 17, 2022 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned cases (the "Chapter 11 Cases").

9. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner,

or committee has been appointed in these Chapter 11 Cases.

10. Contemporaneous with the filing of this Motion, the Debtors are filing the *Motion for Entry of an Order Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure Directing Joint Administration of Cases for Procedural Purposes Only* requesting the joint administration of these Chapter 11 cases.

## V. FACTUAL BACKGROUND

### A. General

11. The Debtors operate as part of a related group of global technology companies that design, manufacture, distribute and support natural gas operated medium and heavy-duty commercial vehicles sold worldwide. The companies convert vehicles to compressed natural gas engines, refurbish and service existing class 8 vehicles powered by natural gas engines and fueling systems for application in their own motor transportation business and for sale to third party companies interested in the conversion of trucks and buses to operate on natural gas. The companies are among the largest privately held natural gas logistics companies in the United States. As a group, the companies employed over 240 mechanics, driver, and logistics professionals specializing in CNG vehicles.

12. NGV Global is the parent holding company for the other three (3) Debtors, as well as several non-debtor entities. NGV Global was founded in 2019 as a Delaware corporation and later reincorporated as a Nevada corporation. NGV Global's business objective is focused on capturing the synergy of several complimentary businesses in the natural gas segment that can work together efficiently to advance overall performance. This collaboration of entities mitigates risks typically associated with operating in the alternative fuel space by creating a structure that not only allows the group to sell products to the marketplace, but also financially benefit from the operational advantages of products produced.

13. NGV Texas is a Texas corporation that provides compressed natural gas (CNG) conversions, refurbishments, and servicing options for small and mid-size businesses,

government, and major corporations to help them reduce their carbon footprint. NGV Texas is one of the most technologically advanced CNG conversion experts in the United States. NGV Texas specializes in CNG conversion of all classes of vehicles, including Class 8 diesel trucks, box trucks, trailers, school busses, fleet vehicles, vans, and passenger vehicles. This process allows vehicles to either transition to natural gas completely, or to a dual-fuel system allowing the vehicles to use natural gas simultaneously with traditional fuels such as diesel or gasoline.

14. NGS is a Texas limited liability company that provides high-pressure cryogenic fuel logistics services to a variety of clients in the industrial/manufacturing and power generation industries. NGS is the premier carrier of CNG, Liquified Natural Gas (LNG) and Hydrogen (H2) in the Southwest market. NGS is licensed and equipped to haul CNG/LNG/H2 and other high pressure and cryogenic gasses all across the 48 states of the continental USA.

15. NGL is a Texas corporation that operates as one of the largest privately-owned 100% alternative fuel transportation companies in the United States. NGL provides a range of logistics services, including dedicated truckload, less-than-truckload, mail/e-commerce, rock hauling, expedited and intermodal/drayage, and its customer base includes Amazon, PepsiCo, Hobby Lobby, UPS, and the USPS. The transportation industry is among the largest contributors to greenhouse gas emissions, and NGL helps its customers reduce carbon emissions by up to 85% and improve environmental, social, and governance scores. The NGL fleet consists of medium and heavy-duty commercial alternative fuel vehicles, including CNG, renewable natural gas (RNG), and hybrid electric vehicles.

**B.**  **The Impetus for Seeking Bankruptcy Relief**

16. In 2019 and 2020, the Debtors entered into a series of sale-leaseback transactions with Mike Albert, Ltd. ("MAL") pursuant to various Master Lease Agreements and related agreements (the "Leases").[1] Pursuant to these transactions, MAL purchased from NGV Texas

---

[1] The Debtors specifically reserve the right to contend that the Leases are secured transactions rather than true leases.

over 600 vehicles and then leased those same vehicles back to NGS and NGL. The purpose of the sale-leaseback transactions was to facilitate the refurbishment, deployment, utilization and sale of the 600+ vehicles to build and expand the NGV Global companies' logistic business using cost effective CNG fuel as a competitive advantage.

17. Shortly after the sale-leaseback transactions, the COVID pandemic brought the world economy to a halt and delayed the Debtors' plan to deploy vehicles and build their logistics business. As of the Petition Date, approximately 170 vehicles out of the 600 vehicles subject to the Leases with MAL are being used in the Debtors' logistics business and are revenue producing. As a result of the COVID pandemic delaying the Debtors ability to launch and develop its logistic and other businesses, the Debtors have not been able to generate sufficient revenue and revenue quality to meet its payment obligations under the Leases. MAL commenced litigation against the Debtors seeking to recover amounts due under the Leases or to repossess the vehicles.

18. These bankruptcy cases were filed to allow the Debtors an opportunity to address the issues raised in the MAL litigation and to develop a business strategy to reduce costs, streamline operations, concentrate business around customers with sufficient rates, restructure and negotiate creditor obligations so that they may emerge from bankruptcy as viable enterprises going forward.

## VI. THE DEBTORS' WORKFORCE

19. As noted above, the Debtors do not employ any employees. Instead, a separate, affiliated, non-debtor entity, NGV HR, employs all of the Debtors' workforce. Certain of the employees, such as drivers and mechanics, are dedicated to one Debtor entity and thus the payroll associated with such dedicated employees are the obligations of the particular Debtor such employees are dedicated to. Separately, the executive team and accounting/administrative personnel serve all of the Debtors and thus each of the Debtors are allocated, and share, a portion of the payroll obligations owed to the executive and accounting/administrative personnel (the "Corporate Overhead").

20. The Debtors each fund their individual aggregate share of the Corporate Overhead as well as the payroll, payroll taxes, and other workforce obligations for the dedicated employees that are used by each individual company.

A.   **NGV Global's Workforce**

21. NVG Global has fourteen (14) full-time employees consisting of accounting staff, officers, human resource personnel, and other administrative employees (the "NGV Global Employees"). The NGV Global Employees service the Debtors and non-debtor affiliates, and their wages/salaries make up the Corporate Overhead.

B.   **NGV Texas' Workforce**

22. NVG Texas has forty-two (42) full-time dedicated employees including mechanics, production workers, parts handlers, and supervisors (the "NGV Texas Employees").

C.   **NGS' Workforce**

23. NGS has five (5) part-time dedicated employees including four (4) over the road drivers paid by the hour and one (1) over the road drivers paid by the dispatched mile (the "NGS Employees").

D.   **NGL's Workforce**

24. NGL has one hundred-thirty three (133) full-time dedicated employees consisting of drivers (the "NGL Employees" and collectively with the NGV Global Employees, NGV Texas Employees, and NGS Employees, the "Employees").

E.   **Employee Benefit Programs**

25. NGV HR provides full-time Employees completing thirty (30) days of employment with health insurance through Aetna and additional voluntary benefits through GIS Benefits and telemedicine benefits through Fresh Benefits. Likewise, the 401(k) program is only available to full-time Employees completing thirty (30) days of employment and is administered by Nationwide. Lastly, NGV HR also provides paid Federal holidays to all Employees equal to five (5) days. Vacation pay is also provided to Employees that have been employed for 90 days and have worked

the last scheduled day prior to the holiday and the first scheduled shift after the holiday. No Employees received paid sick leave.

### VII. THE DEBTORS' PAYROLL PROCESS

26. The payroll cycle for the Employees is as follows:

   a. Drivers who are employed by NGL and primarily service NGL's business with the U.S. Postal Service are paid on a weekly basis every Tuesday. Payroll covers a 7-day Sunday-Saturday period. For example, for payroll scheduled for November 22nd, the 7-day pay period covered will be Sunday November 6 through Saturday, November 12 (the "U.S. Mail Payroll");

   b. Drivers employed by NGL not servicing the U.S. Postal Service are referred to as "Driver Group 2." This group is paid on a weekly basis every Thursday. Payroll paid on Thursdays covers the period of the prior Sunday-Saturday, i.e. payroll scheduled for November 24th covers the period of Sunday, November 13th through Saturday, November 19th (the "Driver Group 2 Payroll");

   c. The drivers employed by NGS and the remaining non-driver Employees, are paid on a bi-weekly basis every other Friday. Payroll paid every other Friday covers the period of the prior two weeks (i.e. payroll distributed on November 18th covered the period of Sunday, October 30 through Saturday, November 12 (the "Non-Driver Payroll").

Henceforth, the Debtors will continue to pay Employees on the above-listed schedule.

27. On November 18, 2022, the Debtors terminated the employment of thirty-eight (38) Driver Group 2 employees, and thirty-one (31) non-driver employees. The Debtors seek to pay these terminated employees the same day as the next scheduled payroll day for Driver Group 2 Payroll. The Debtors in the exercise of their business judgment believe it is critical for the Debtors' continued operations to pay the terminated employees as proposed herein. The Debtors' remaining workforce is deeply impacted by the termination of a number of employees. If the remaining workforce should learn that the terminated employees will not be paid on a timely basis, there is very real risk that the remaining workforce will immediately seek employment elsewhere. For that reason the Debtors submit that paying the terminated employees on the November 25, 2022 payroll is in the best interest for the preservation of the value of the Debtors' estates.

## VIII. THE PRE-PETITION WORKFORCE OBLIGATIONS

28. U.S. Mail Payroll.

   a. The next U.S. Mail Payroll is due on Tuesday, November 22, 2022, and covers the period from November 6, 2022, through November 12, 2022, all pre-petition days.

      This payroll includes $47,577.07 in net wages, $17,054.95 in withheld taxes and employer paid taxes and $1,585.35 in garnishment payments. In addition, contributions to the 401(k) including employee deferrals are $3,538.23 and contributions for health and welfare plan premiums are $3,979.35. The Debtors are seeking authority to fund those amounts.

   b. The U.S. Mail Payroll for November 29, 2022, covers the period from November 13, 2022 through November 19, 2022, and will include five (5) pre-petition days, November 13-17, in combination with two (2) days of post-petition earnings.

      This payroll is estimated to include approximately $47,500 in net wages, approximately $17,000 in withheld taxes and employer paid taxes, approximately $1,585 in garnishment payments, approximately $3,500 in contributions to the 401(k) plan, and $3,980 in contributions for health and welfare plan premiums. The Debtors are seeking authority to fund those amounts on November 28, 2022.

29. Driver Group 2 Payroll.

   a. The next Driver Group 2 Payroll is due on Friday, November 25, 2022 and covers the period from November 13 through November 19 and will include five (5) pre-petition days, November 13-17, in combination with two (2) days of post-petition earnings.

      This payroll includes approximately $112,800 in net wage payments, approximately $36,400.00 in withheld taxes and employer paid taxes, approximately $6,400 in contributions to the 401(k) plan, and approximately $7,800 in contributions for health and welfare premiums. The Debtors are seeking authority to fund those amounts on November 23, 2022 on account of the bank holiday on November 24, 2022.

   b. Additionally, the Debtors seek to include in the November 25, 2022 payroll the final payments to terminated employees that would otherwise be in the Non-Driver Payroll group. This final payment to these terminated employees will include approximately $42,400 in net wages, approximately $13,250.00 in withheld taxes and employer paid taxes, approximately $4,000 in contributions to the 401(k) plan, and approximately $4,150 in contributions for health and welfare premiums associated with such payments. The Debtors are seeking permission to fund those amounts on November 23, 2022, which is on Wednesday on account of the bank holiday on Thursday November 24, 2022.

30. <u>Non-Driver Payroll</u>.

The next Non-Driver Payroll is due on December 2, 2022 and will include five (5) pre-petition days, November 13-17, in combination with nine (9) days of post-petition earnings.

The payroll is estimated to include approximately $201,640.00 in net wage payments, approximately $15,200 in withheld taxes and employer paid taxes, approximately $21,800 in contributions to the 401(k) plan, and approximately $23,500 in contributions for health and welfare premiums. The Debtors are seeking permission to fund those amounts on December 1, 2022.

31. While the Debtors do provide expense reimbursement for Employees who incur charges for operating supplies, fuel, repairs and other expenses on the road for which other means of payment are not available, the Debtors do not owe any Employees for expenses incurred pre-petition.

32. The Pre-Petition Workforce Obligations described above is summarized in the table below:

| Payroll Date | Net Wages | Withholding | Garnish-ment | 401(k) (deferral & matching) | Health / Welfare Premium | Total per Payroll |
|---|---|---|---|---|---|---|
| 11/22/22 U.S. Mail | $47,577.07 | $17,054.95 | $1,585.35 | $3,538.23 | $3,979.35 | $73,734.95 |
| *11/25/22 U.S. Mail | $112,800.00 | $36,400.00 | | $6,400.00 | $7,800.00 | $163,400.00 |
| *11/29/22 Group 2 Drivers | $47,500.00 | $17,000.00 | $1,585.35 | $3,500.00 | $3,980.00 | $73,565.35 |
| 11/29/22 Terminated Employees | $42,400.00 | $13,250.00 | | $4,000.00 | $4,150.00 | $63,800.00 |
| **12/2/222 Non-Driver | $201,640.00 | $15,200.00 | | $21,800.00 | $23,500.00 | $262,140.00 |
| Total per Category | $451,917.07 | $98,904.95 | $3,170.70 | $39,238.23 | $43,409.35 | **Grand Total $636,640.30** |

*This payroll covers 5 days pre-petition and 2 days post-petition.
**This payroll covers 5 days pre-petition and 9 days post-petition.

## IX. RELIEF REQUESTED

33. By this Motion, the Debtors seek authority to pay outstanding Pre-Petition Workforce Obligations and to direct the bank at which the Debtors maintain their accounts to receive, process, honor, and pay all related checks, drafts, wires, or automated clearing house transfers, provided sufficient funds are available to honor all such payments, without regard to when the applicable checks, drafts, wires or transfers were issued.

34. The Debtors are additionally seeking permission to use cash collateral, to the extent necessary, for the purpose of funding the payroll expenses detailed in this Motion.

35. Specifically, the Debtors seek permission to fund: (a) net wages and salaries in the total amount of approximately $451,917, including any amounts owed for recently used holiday, vacation, or sick leave pay; (b) approximately $98,904.95 in payroll taxes withheld from wages to the appropriate taxing authority or other party; (c) permit Employees to use post-petition paid time off, holidays, and sick leave days that they accrued pre-petition; (d) approximately $3,170.70 employee garnishments; (e) approximately $43,409 in health and welfare insurance, and (f) approximately $39,238 in 401(k) plan deferral and matching. The Debtors are additionally seeking authorization to use cash collateral, as necessary, to make the payroll payments detailed in this Motion. The Debtors seek entry of any other orders necessary to grant the relief requested herein.

## X. BASIS FOR RELIEF

36. Authority to pay the requested outstanding Pre-Petition Workforce Obligations should be granted because such amounts are tantamount to or analogous to priority wage claims pursuant to 11 U.S.C. § 507(a)(4).[2]

37. Section 507(a) of the Bankruptcy Code provides that employee compensation, subject to certain conditions, are afforded priority distribution up to $13,650. *See* 11 U.S.C. §§

---

[2] *See In re News Publishing Co.*, 488 B.R. 241 (Bankr. N.D. Ga. 2013) (Court authorized payment of staffing agency's claim that would be paid to temporary workers on theory that claim was analogous to prepetition wage claim payable on a fourth-level priority basis in bankruptcy.); *In re Equalnet Communications Corp.*, 258 B.R. 368 (Bankr. S.D. Tex. 2000) (Debtors would be allowed to pay claim asserted by contract employee for what was tantamount to priority wages, to the extent of statutory cap on wage claims.).

507(a)(4) and (a)(5). Moreover, section 507(a)(4) priority claims are entitled to payment in full under a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(B). Accordingly, as the Employees may be entitled to a priority distribution for pre-petition amounts owed, the relief requested herein for employee wages and salary should primarily affect the timing of payment of employee claims rather than their treatment for distribution purposes, and should neither prejudice general unsecured creditors nor materially affect the Debtors' bankruptcy estates. Furthermore, 11 U.S.C. § 507(a)(4) does not expressly require the individual or corporation to be a direct employee of the debtor entity.

38. Additionally, under section 105(a) of the Bankruptcy Code, courts have permitted post-petition payment of pre-petition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *In re Tusa-Expo Holdings, Inc.*, 2008 Bankr. LEXIS 2852, *6-11 (Bankr. N.D. Tex. 2008); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 n. 17 (Bankr. N.D.Tex. 2002); *see also, In re Gulf Air, Inc.*, 112 B.R. 152 (Bankr. W.D.La. 1989).

39. Alternatively, the Debtor seeks entry of an order authorizing it to pay, in the reasonable exercise of its business judgment, pre-petition amounts owed for Pre-Petition Workforce Obligations as a critical vendor because the Employees are essential to Debtors' business operations. NGV HR provides the Debtors with all of their workforce and staff. NGV HR has informed the Debtors that it will not have any funds with which to pay the Employees their Pre-Petition Workforce Obligations unless Debtors fund such amounts to NGV HR. If the Employees are not paid, they will leave and find other jobs. Without the Employees, the Debtor's business operations would collapse. Additionally, the Debtors believe it is critical to pay the terminated employees to avoid more erosion of morale with the remaining workforce so to preserve the value of the estates for the benefit of all creditors.

40. Pursuant to Sections 105(a), 363(b), and 507(a)(4) and (5) of the Bankruptcy Code and the "necessity of payment" doctrine, the Debtors seek authority to pay the foregoing outstanding employee obligations and expenses. Section 363(b)(1) of the Bankruptcy Code

authorizes a debtor-in-possession to use property of the estate other than in the ordinary course of business after notice and a hearing. 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code further provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this Title." 11 U.S.C. § 105(a).

41. The Employees are an essential component of a successful bankruptcy. Many of them live from paycheck to paycheck, relying exclusively on receiving their full compensation to pay their daily living expenses. As a result, the Employees will be exposed to significant financial hardship if the Debtors are not permitted to honor the unpaid Pre-Petition Workforce Obligations, likely impairing workforce morale and welfare at this critical time.

42. Amounts withheld from Employees' paychecks to be paid for specific purposes as designated by the Employees, or, in the case of garnishments, by judicial authorities, must be paid accordingly. The failure to make these payments will result in hardship to certain Employees. Moreover, if the Debtors are unable to remit certain of these amounts, the Employees could face legal action and/or imprisonment. Pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

43. In addition, to avoid the serious disruption of the Debtors' reorganization efforts that could result from the nonpayment of any withholding taxes, the Debtors seek authority to fund withholdings taxes, which is collected on behalf of the Employees to the applicable taxing authorities. Many federal, state and local taxing authorities impose personal liability on the people in control of entities responsible for collecting taxes from employees to the extent any such taxes are collected but not remitted. Thus, the Debtors' officers and directors may be held personally liable for the payroll taxes. *See* 26 U.S.C. § 6672. To the extent that any of the payroll taxes remain unpaid, the Debtors' officers and directors may be subject to collection efforts that would distract the Debtors and their officers and directors, to the detriment of all parties in interest in these chapter 11 cases.

## XI. DIRECTION TO DEBTORS' BANKS

44. To give effect to the requested relief, the Debtors request that the Court provide specific authorization and direction to the Debtors' banks, and any other applicable banks, to receive, process, honor and pay all checks, drafts, wires, or automated clearing house transfers made on account of the Pre-Petition Workforce Obligations, provided sufficient funds are available to honor all such payments, without regard to when the applicable check, draft, wired or transfer was issued.

## XII. WAIVER OF BANKRUPTCY RULE 6004 (A) AND (H)

45. Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure, "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 21 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm..." FED. R. BANKR. P. 6003(b). For the reasons described herein, the Debtors submit that the requirements of Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

46. The Debtors submit that the total amount to be paid for Pre-Petition Workforce Obligations if the requested relief is granted is warrantied and justified compared with the importance and necessity of the Employees to the Debtors and the insurance to the Debtors' operations.

47. Given the emergency need for relief requested herein, and to implement the foregoing successfully, the Debtors seek a waiver of the requirements under Bankruptcy Rule 6004, including the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

## XIII. LIMITED NOTICE

48. Notice of this Motion has been provided to the office of the United States Trustee for the Northern District of Texas, the Debtors' pre-petition secured lenders, the holders of the

twenty (20) largest unsecured claims against the Debtors, and parties filing a notice of appearance, as set forth in the Certificate of Service filed herewith. Under the Bankruptcy Code, the Bankruptcy Rules, and the N.D. Tex. L.B.R., the Debtors submit that no other further notice need be provided.

### XIV. PRAYER

WHEREFORE, the Debtors respectfully request entry of the attached proposed order granting (a) the relief requested herein and (b) such other and further relief as is just and proper.

Dated: November 20, 2022

Respectfully submitted,

/s/ Dylan T.F. Ross

Jeff P. Prostok
State Bar No. 16352500
Lynda L. Lankford
State Bar No. 11935020
Emily S. Chou
State Bar No. 24006997
Dylan T.F. Ross
State Bar No. 24104435
FORSHEY & PROSTOK, L.L.P.
777 Main Street, Suite 1550
Fort Worth, Texas 76102
Phone: (817) 877-8855
Fax: (817) 877-4151
jprostok@forsheyprostok.com
llankford@forsheyprostok.com
echou@forsheyprostok.com
dross@forsheyprostok.com

PROPOSED COUNSEL
FOR THE DEBTORS

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon the office of the United States Trustee for the Northern District of Texas, the secured lenders, the holders of the twenty (20) largest unsecured claims against the Debtors, and parties filing a notice of appearance, via ECF electronic Notice, if available, on November 20, 2022 and to be served via United States Mail, first class postage prepaid to the parties on the attached service list on November 21, 2022.

/s/ Dylan T.F. Ross
Dylan T.F. Ross

*Service List*
*NGV Global, et al.*
*#6321*

NGV Global Group, Inc., et al.
Attn: Farroukh Zaidi, CEO
10733 Spangler Road
Dallas, TX 75222

Erin Schmidt, Trial Attorney
Office of the U.S. Trustee
1100 Commerce St., Room 976
Dallas, TX 75202

FirstCapital Bank of Texas, N.A.
5580 LBJ Freeway, Suite 100
Dallas, TX 75240

Tom McLeod Software Corp.
100 Corporate Parkway, Suite 100
Birmingham, AL 35242

Ford Motor Credit Company, LLC
PO Box 680020, MD 610
Franklin, TN 37068

Maplemark Bank
4143 Maple Ave., Suite 100
Dallas, TX 75219

Bank of DeSoto, NA
PO Box 7777
DeSoto, TX 75123

Mike Albert, Ltd.
10340 Evendale Dr.
Cincinnati, OH 45241

Mike Albert, Ltd.
c/o Patrick Lynch
Quilling, Selander, et al.
2001 Bryan St., Suite 1800
Dallas, TX 75201

Simmons Bank
4625 S National Ave.
Springfield, MO 65810

Tristate Capital Bank
One Oxford Centre
301 Grant St., Suite 2700
Pittsburgh, PA 15219

Vision Financial Group, Inc.
615 Iron City Drive
Pittsburgh, PA 15205

Internal Revenue Service
Centralized Insolvency Operations
PO Box 21126
Philadelphia, PA 19114-0326

Internal Revenue Service
Special Procedures Staff
Mail Code 5020-DAL
1100 Commerce St., Room 9B8
Dallas, TX 75242

# NGV Global Group, Inc.
# 20 Largest Unsecured Creditors

Addison Group
7076 Solutions Center
Chicago, IL 60677-7000

AFCO
5600 North River Rd.
Suite 400
Rosemont, IL 60018-5187

ANGI
PO Box 516
Janeville, WI 53547-5216

Bridgestone
PO Box 730026
Dallas, TX 75373-0026

Cesar Torres

Champion Pumping LLC
2351 W. Northwest Hwy.
Suite 3358
Dallas, TX 75220

Comdata
5301 Mayland Way
Brentwood, TN 37027

Dallas Regional Chamber
500 N. Akard St., Suite 2600
Dallas, TX 75201

Emeri Construction Group
PO Box 542736
Dallas, TX 75354

Faisal Reza
3604 Barrydale Dr.
Denton, TX 76208

John Ames
1201 Elm St., Suite 2600
Dallas, TX 75270

OSI 10737 Spangler Road LLC
309 East Paces Ferry Rd. NE
Suite 60
Atlanta, GA 30305

OSI 10801 Spangler Road LLC
309 East Paces Ferry Rd. NE
Suite 60
Atlanta, GA 30305

OSI 2001 Manana Drive LLC
309 East Paces Ferry Road NE
Suite 60
Atlanta, GA 30305

Southwest Airlines Federal Credit Union
2430 Shorecrest Dr.
Dallas, TX 75235

Sunwest Communications Inc.
4851 LBJ Freeway
Dallas, TX 75224

Tara Energy
4925 Greenville Ave.
Dallas, TX 75206

TEKSwork
118 South 3rd St.
Williamburg, KY 40769

The Carbon Agency
802 N. Kealy Ave., Suite 200
Lewisville, TX 75057-3136

Wallis State Bank
11135 Harry Hines Blvd.
Dallas, TX 75229

# Natural Gas Vehicles Texas, Inc.
# 20 Largest Unsecured Creditors

1-800-Radiator & A/C
2626 Northhaven Road
Dallas, TX 75229

Cavalier Co.
196 Mark Lane
Royse City, TX 75189

Continental Tire
1830 MacMillian Park Dr.
Fort Mill, SC 29707

Cummins
PO Box 772642
Detroit, MI 48277-2642

Daltex Trailer Repair
3124 Partridge Ct.
Grand Prairie, TX 75052

Fleetpride Truck and Trailer Park
601 W Mockingbird Lane
Dallas, TX 75247

Geoff Beveridge
661 E Main St., Suite 200
Midlothian, TX 76065

GM Financial
PO Box 183593
Dallas, TX 76096-3834

HYLIION
1202 BMC Dr., Suite 100
Cedar Park, TX 78613

Imperial Supplier LLC
PO Box 5362
Janeville, WI 53547-5362

John R. Ames CTA
1201 Elm St., Suite 2600
Dallas, TX 75270

Marcel Pradella
2124 Dogwood Creek Ave.
Yukon, OK 73099

Permier Truck Group of Dallas No.
PO Box 840827
Dallas, TX 75284-0827

Recappers (V)

Rush Enterprises
109 Cundiff Dr.
Seagoville, TX 75159

Snap On
12617 E FM917 Suite E
Alvarado, TX 76009

Southern Tire Mart
816 W Mockingbird Dr.
Dallas, TX 75247

Southwest International Truck (V)
3722 Irving Blvd.
Dallas, TX 75247

U-line
PO Box 88741
Chicago, IL 60680-1741

Unifirst
PO Box 650841
Dallas, TX 75265-0481

Valvoline

Z & Son Transmission
10418 C.F. Hawn Frwy
Dallas, TX 75217

T. J. Yarbourogh
1121 Beechview, Apt. 2213
Dallas, TX 75218

## Natural Gas Supply, LLC
## 20 Largest Unsecured Creditors

Comdata
5301 Mayland Way, Suite 100
Brentwood, TN 37027

## Natural Gas Logistics Inc.
## 20 Largest Unsecured Creditors

Advantage Trailer Rentals
PO Box 772320
Detroit, MI 48277

**Boscus Canada Inc.
900 Avenue Selkirk
Pointe-Clair QC H9R3S3**

Comdata
5301 Mayland Way
Brentwood, TN 37027

Crossroads Trailer Service Inc.
226 Irby Lane
Irving, TX 75061

Crum & Foster
855 Winding Brook Dr.
Glastonbury, CT 06033

DCLI
3525 Whitehall Park Dr.
Charlotte, NC 02827

Enrique Joya

Escreen
PO Box 25902
Overland Park, KS 66225

Hartford Financial Services
PO Box 415738
Boston, MD 02241-5738

J.J. Keller
PO Box 6609
Carol Stream, IL 60197

Kay Polymer Trucking
1919 FM 565
Baytown, TX 77523

Lockton
PO Box 123036
Dallas, TX 75312-3036

Loves
PO Box 842568
Kansas City, MO 64184

McKinney Trailer Rentals
PO Box 515574
Los Angeles, CA 90051

McLeod Software
Dept. 3500
Birmingham, AL 35283

| | | |
|---|---|---|
| Mike Hendrixson<br>4819 Osprey Dr.<br>Orange Beach, AL 36561 | Penske<br>PO Box 802577<br>Chicago, IL 60680 | Perez Luis Manuel Hernandez<br>c/o Paul R. Hornung<br>Domingo A. Garcia PC<br>1111 W Mockingbird Ln, Ste 1200<br>Dallas, TX 75247 |
| Republic Services<br>8101 E. Little York Rd.<br>Houston, TX 77016 | Samba Holdings Inc.<br>Dept. LA 24536<br>Pasadena, CA 91185 | Tenstreet LLC<br>5121 S. Wheeling Ave.<br>Tulsa, OK 74105 |
| Tonya Singh<br>c/o Jim S. Adler & Associates<br>2711 N. Haskell, Suite 2500<br>Dallas, TX 75204 | TRAC Intermodal<br>750 College Road East<br>Princeton, NJ 08540 | Elliott Warren<br>1215 Adelaide Dr.<br>Dallas, TX 75216 |