Jeff P. Prostok
State Bar No. 16352500
Lynda L. Lankford
State Bar No. 11935020
FORSHEY & PROSTOK, L.L.P.
777 Main Street, Suite 1550
Fort Worth, Texas 76102
Phone: (817) 877-8855
Fax: (817) 877-4151
jprostok@forsheyprostok.com
llankford@forsheyprostok.com

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| In re: ) | Chapter 11 Cases |
| ) | |
| NGV GLOBAL GROUP, INC., ) | Case No. 22- 42780 |
| ) | |
| NATURAL GAS VEHICLES TEXAS, INC. ) | Case No. 22- 42781 |
| ) | |
| NATURAL GAS SUPPLY, LLC ) | Case No. 22- 42782 |
| ) | |
| NATURAL GAS LOGISTICS INC. ) | Case No. 22- 42783 |
| ) | |
| DEBTORS. ) | (Motion for Joint Administration Pending) |
| ) | **Emergency Hearing Requested** |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING
DEBTORS TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS; AND
(II) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW NGV Global Group, Inc. ("NGV Global"), Natural Gas Vehicles Texas,

Inc. ("NGV Texas"), Natural Gas Supply, LLC ("NGS"), and Natural Gas Logistics, Inc. ("NGL",

and collectively with NGV Global, NGV Texas, and NGS, the "Debtors" or the "Companies"), as

debtors and debtors-in-possession, file this *Emergency Motion for Entry of an Order (i)*

*Authorizing the Debtor to Pay Prepetition Claims of Critical Vendors, and (ii) Granting Related*

*Relief* (the "Motion").  In support of this Motion, the Debtor respectfully states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. sections 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. section 157(b).

2.      Venue is proper before this Court pursuant to 28 U.S.C. sections 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Fed. R. Bankr. P. (the "Bankruptcy Rules").

## BACKGROUND

4.      On November 17, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code.

5.      The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee, examiner, or committee has been appointed in this case.

## ABOUT THE COMPANIES

6.      The Debtors operate as part of a related group of global technology companies that design, manufacture, distribute and support natural gas operated medium and heavy-duty commercial vehicles sold worldwide.  The companies convert vehicles to compressed natural gas engines, refurbish and service  existing class 8 vehicles powered by natural gas engines and fueling systems for application in their own motor transportation business and for sale to third party companies interested in the conversion of trucks and buses to operate on natural gas.  The companies are among the largest privately held natural gas logistics companies in the United States.  As a group, the companies employed over 240 mechanics, driver, and logistics professionals specializing in CNG vehicles.

7.      NGV Global is the parent holding company for the other three (3) Debtors, as well as several non-debtor entities.  NGV Global was founded in 2019 as a Delaware corporation and later reincorporated as a Nevada corporation.  NGV Global's business objective

is focused on capturing the synergy of several complimentary businesses in the natural gas segment that can work together efficiently to advance overall performance.  This collaboration of entities mitigates risks typically associated with operating in the alternative fuel space by creating a structure that not only allows the group to sell products to the marketplace, but also financially benefit from the operational advantages of products produced.

8.     NGV Texas is a Texas corporation that provides compressed natural gas (CNG) conversions, refurbishments, and servicing options for small and mid-size businesses, government, and major corporations to help them reduce their carbon footprint.  NGV Texas is one of the most technologically advanced CNG conversion experts in the United States.  NGV Texas specializes in CNG conversion of all classes of vehicles, including Class 8 diesel trucks, box trucks, trailers, school busses, fleet vehicles, vans, and passenger vehicles.  This process allows vehicles to either transition to natural gas completely, or to a dual-fuel system allowing the vehicles to use natural gas simultaneously with traditional fuels such as diesel or gasoline.

9.     NGS is a Texas limited liability company that provides high-pressure cryogenic fuel logistics services to a variety of clients in the industrial/manufacturing and power generation industries.  NGS is the premier carrier of CNG, Liquified Natural Gas (LNG) and Hydrogen (H2) in the Southwest market.  NGS is licensed and equipped to haul CNG/LNG/H2 and other high pressure and cryogenic gasses all across the 48 states of the continental USA.

10.    NGL is a Texas corporation that operates as one of the largest privately-owned 100% alternative fuel transportation companies in the United States.  NGL provides a range of logistics services, including dedicated truckload, less-than-truckload, mail/e-commerce, rock hauling, expedited and intermodal/drayage, and its customer base includes Amazon, PepsiCo, Hobby Lobby, UPS, and the USPS.  The transportation industry is among the largest contributors to greenhouse gas emissions, and NGL helps its customers reduce carbon emissions by up to 85% and improve environmental, social, and governance scores.  The NGL

fleet consists of medium and heavy-duty commercial alternative fuel vehicles, including CNG, renewable natural gas (RNG), and hybrid electric vehicles.

11.     In 2019 and 2020, the Debtors entered into a series of sale-leaseback transactions with Mike Albert, Ltd. ("MAL") pursuant to various Master Lease Agreements and related agreements (the "Leases").[1]  Pursuant to these transactions, MAL purchased from NGV Texas over 600 vehicles and then leased those same vehicles back to NGS and NGL.  The purpose of the sale-leaseback transactions was to facilitate the refurbishment,  deployment, utilization and sale of the 600+ vehicles to build and expand the NGV Global companies' logistic business using cost effective CNG fuel as a competitive advantage.

12.     Shortly after the sale-leaseback transactions, the COVID pandemic brought the world economy to a halt and delayed the Debtors' plan to deploy vehicles and build their logistics business.  As of the Petition Date, approximately 170 vehicles out of the 600 vehicles subject to the Leases with MAL are being used in the Debtors' logistics business and are revenue producing.  As a result of the COVID pandemic delaying the Debtors ability to launch and develop its logistic and other businesses, the Debtors have not been able to generate sufficient revenue and revenue quality to meet its payment obligations under the Leases.  MAL commenced litigation against the Debtors seeking to recover amounts due under the Leases or to repossess the vehicles.

13.     These bankruptcy cases were filed to allow the Debtors an opportunity to address the issues raised in the MAL litigation and to develop a business strategy to reduce costs, streamline operations, concentrate business around customers with sufficient rates, restructure and negotiate creditor obligations so that they may emerge from bankruptcy as viable enterprises going forward.

---

[1] The Debtors specifically reserve the right to contend that the Leases are secured transactions rather than true leases.

**RELIEF REQUESTED**

14.     By this Motion, the Debtors respectfully request the entry of an order authorizing the Debtors to pay the prepetition debt owed to certain of the Debtors' trade vendors.  Without the payment of these prepetition obligations, the Debtors will face catastrophic disruptions to their businesses at a time when the Debtors can ill-afford any interference with their businesses.

15.     Specifically, for the reasons more fully addressed below, the Debtors request authority from the Court to (1) pay the prepetition obligations owed to Comdata Inc. who provides the Debtors with corporate credit cards for fueling and for other corporate general use, (2) pay certain fines imposed by the City of LaPorte, Texas, that are imposed against the Debtors' drivers personally on account of exceeding weight limits which primarily result from loading requirements required by Debtors' customers as opposed to actions by the drivers, and (3) granting any necessary related relief.  The Debtors further request that the Court waive the fourteen (14) day stay period set forth in Federal Rule of Bankruptcy Procedure 6004(h), as may be applicable, and direct that any order granting this Motion shall be immediately enforceable upon entry.

**THE PREPETITION CRITICAL VENDORS**

**A.     Comdata Inc.**

**(i)     The Fuel Cards**

16.      As of the Petition Date, the Debtors' primary revenue source is generated from the deployment of its fleet of alternative fuel trucks and drivers providing transportation and logistics services for their customers, which include some of the largest companies in the country.  In the performance of this service, each of the drivers is issued two credit cards (collectively, the "Fuel Cards") used for re-fueling and other road related fees and charges such as oil and other engine fluids, lumper fees, towing, citations, and other items that need to be paid at the time of service.  The Fuel Cards are issued and maintained by Comdata Inc. ("Comdata").  One card is a Comdata branded proprietary card which is accepted at most major

truck stops.  The other is a Comdata issued MasterCard branded fuel card which is necessary for use at smaller truck stops which do not accept the Comdata branded proprietary card.  The Fuel Cards are corporate cards billed to NGL and not to the individual drivers.  NGL sets daily and transactional limits on these cards so that costs incurred on these cards are limited to costs necessary for the operation of its vehicles.

17.      Comdata invoices NGL on a daily basis for activity charged during the previous day. For example, charges incurred on a Monday are invoiced on Tuesday.  Payment is due seven days after the day a charge is incurred.  In other words, payment for charges incurred on a Monday would be due the next Monday.  In the ordinary course, NGL pays the Fuel Cards on a daily basis, on the due day of each invoice.

18.      As of the Petition Date, the outstanding unpaid charges on the Fuel Cards aggregate $102,640.41, which includes charges incurred from November 10, 2022, to November 17, 2002.[2]  The charges are billed under three separate Account Codes:  T-742, L-666, and L-41N.  Attached hereto as **Exhibit A** are the invoices dated November 18, 2022 issued for each of the account codes showing the balances owed as of November 17, 2022, which aggregate $102,604.41.

19.      The Debtors cannot continue to operate their businesses without fuel and any disruption to the timely delivery of the customers' goods could be catastrophic to the Debtors' business, particularly as the holiday season has arrived.  The Debtors believe that Comdata will not allow the continued use of the Fuel Cards if the prepetition charges are not paid.  Therefore, the Debtors request that NGL be authorized to pay the prepetition invoices to Comdata in the aggregate amount of $102,604.41, plus any additional prepetition amounts that may be reflected on additional invoices received from Comdata.

---

[2] The Debtors include as prepetition debt the charges made prior to the time of the filing of their bankruptcy petitions on November 17, 2022.

**(ii)     The Corporate Cards**

20.     Separately, Comdata is also the issuer of corporate MasterCard branded credit cards used by the Debtors' executive and administrative staff (the "Corporate Cards").  Unlike the Fuel Cards, the Corporate Cards are used for purchases of replacement parts, fuel for company vehicles and toll road replenishments. The Corporate Cards are invoiced to NGV Global on Monday of each week covering the prior Monday – Sunday (7-day) period.  As of the Petition Date, the prepetition unpaid balance on the Corporate Cards is $53,168.08, consisting of charges of $32,878.58 for the period of November 7, 2022, to November 13, 2022, and $20,289.50 for the period of November 14, 2022, to November 17, 2022.  Attached hereto as **Exhibit B** is the invoice for the Corporate Cards dated November 14, 2022.[3]

21.     The Debtors are seeking authority to pay the pre-petition balance owed on the Corporate Cards for two reasons.  First, Comdata is the issuer of both the Fuel Cards and the Corporate Cards. The Debtors are concerned that nonpayment of the Corporate Cards' prepetition balance may result in Comdata terminating both the Corporate Cards and the Fuel Cards.  Second, Comdata has provided the Debtors a global credit limit of $200,000 for the Fuel Cards and Corporate Cards combined.  If charges reach the credit limit, no card authorization will be allowed unless Comdata agrees to extend the $200,000 global credit limit. Consequently, if the prepetition balance on the Corporate Cards of approximately $53,000 is not paid, the Debtors will effectively be operating with a credit limit of $147,000 ($200,000 – $53,000) in the post-petition period.  On any given day, the outstanding balance on the Fuel Cards is approximately $90,000 to $100,000.  The Corporate Cards on any given day is in the range of $30,000 to $60,000.  Given these figures, a credit limit of $147,000 (instead of $200,000) would leave the Debtors little wiggle room if a few larger charges happen to be

---

[3]  The invoice for the Corporate Cards covering the period November 14 to November 20 is not yet accessible at the time of the filing of this Motion and the Debtors will supplement same prior to the hearing on this Motion.

incurred in close proximity to one another or if Comdata reduces the global credit limit as a result of the Debtor's filing, and thus raising the risk that the credit limit may be reached and charge authorization denied.  A single day's disruption due to credit limit block would cause major delays for the Debtors' fleet and harm relationships with the customers, potentially strand drivers with no ability to fuel their trucks and damage the Debtor's reputation with its existing drivers.  For these reasons, the Debtors request the authority to pay the prepetition charges on the Corporate Cards to avoid the risk of potential serious disruption to the Debtors' post-petition operations.

**B.      City of LaPorte Fines**

22.      As of the Petition Date, there are certain fines owed to the City of LaPorte, Texas.  The fines resulted from the Debtors' trucks and cargo exceeding certain weight limits imposed by the city in connection with container movements serviced by NGL.  The fines are imposed against the drivers personally.  However, the drivers are not directly responsible for the fines as the weights of individual containers are not known at the time the containers are assigned to the driver.  In the ordinary course of business fines which are not directly related to actions on the part of the driver (i.e. speeding, other traffic violations) are treated as ordinary business expenses and the Debtors pay these fines directly to the city.

23.      Because the drivers are not directly responsible for the fines the Debtors seek to pay by this Motion, it is important to the Debtors that the drivers do not suffer any personal consequences as a result of the fines so that they may continue to do their jobs for the Debtors.

24.      As of the Petition Date, there are four outstanding citations issued by the City of LaPorte as follows:

| Date of Citation | Driver | Court Date | Violation | Fine Amount |
|---|---|---|---|---|
| 9/9/2022 | C. Johnson | 10/12/2022 | Overgross Weight | $1,891.00 |
| 11/17/2022 | C. Johnson | 10/12/2022 | Fail to appear in court | $374.00 |
| 10/21/2022 | C. Johnson | 11/30/2022 | Overgross Weight | $4,581.00 |
| 10/21/2022 | R. Leblanc | 11/30/2022 | Overweight Axle Group | $3,831.00 |
| | | | **TOTAL:** | **$10,677.00** |

25.     The Debtors request the authority to pay the outstanding fines owed to the City of LaPorte so that the individual drivers are not held personally liable.

**BASIS FOR RELIEF REQUESTED**

26.     As set forth above, the Debtors are mindful of their fiduciary obligations to seek to preserve and maximize the value of their estates. The preservation of key business relationships and minimization of the effects of the chapter 11 process on the end users of the Debtors' businesses are primary goals as the Debtors transitions into chapter 11 and prepare to restructure their debts through a plan of reorganization.

27.     For these reasons, the Debtors seek to minimize the adverse business effects, as well as the cash flow impact of their chapter 11 filing, and possible irreparable harm, to the fullest extent possible by obtaining authority to pay (1) Comdata as a necessary trade vendor that is so essential to the Debtors' businesses that the loss of the use of the Fuel Cards and Corporate Cards would cause immediate and irreparable harm to the Debtors' estates and business operations, and (2) the fines levied by the City of LaPorte so that the Debtors' drivers are not held personally liable for what are the Debtors' business expenses.

**A.     The Court May Authorize Payment of the Critical Vendors Under Section 363 of the Bankruptcy Code**

28.     Section 363(b)(1) of the Bankruptcy Code empowers the Court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11

U.S.C. § 363(b)(1).  A debtor's decisions to use, sell, or lease assets outside the ordinary course of business must be based upon the sound business judgment of the debtor. *See, e.g., Inst'l Creditors of Cont'l Airl Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale …").

29.     Courts emphasize that the business judgment rule is not an onerous standard and that it "is flexible and encourages discretion." *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011). "Great judicial deference is given to the [debtor's] exercise of business judgment." *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (N.D. Tex. 2005). As long as a transaction "appears to enhance a debtor's estate, court approval of a debtor in possession's decision to [enter into the transaction] should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the Bankruptcy Code." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (citation and internal quotation marks omitted).

30.     Moreover, section 363(c) of the Bankruptcy Code authorizes a debtor in possession operating its business pursuant to section 1108 of the Bankruptcy Code to "enter into transactions . . . in the ordinary course of business without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). One purpose of section 363(c) of the Bankruptcy Code is to provide a debtor with the flexibility to engage in the ordinary course transactions required to operate its business without undue supervision by its creditors or the court. *See, e.g., In re Roth Am., Inc.*, 975 F.2d

949, 952 (3d Cir. 1992) (citations omitted) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets."). Included within the purview of section 363(c) of the Bankruptcy Code is a debtor's ability to continue "routine transactions" necessitated by a debtor's business practices. *See, e.g., Amdura Nat. Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996) (citations omitted) ("A debtor in possession under Chapter 11 is generally authorized to continue operating its business."); *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007) (citations omitted) (noting that courts have shown a reluctance to interfere in a debtor's making of routine, day-to-day business decisions).

31.     The Bankruptcy Code does not define "ordinary course of business." In determining whether a transaction qualifies as "ordinary course," the courts use the "horizontal" dimension test (i.e., "the way businesses operate within a given industry") and the "vertical" dimension test (i.e., whether the transaction is consistent with the reasonable "expectations of creditors"). *See Denton Cty. Elec. Coop., Inc. v. Eldorado Ranch, Ltd. (In re Denton Cty. Elec. Coop., Inc.)*, 281 B.R. 876, 882 & n.12 (Bankr. N.D. Tex. 2002) (collecting cases). "In general, under the vertical test, courts look at whether the transaction subjects a hypothetical creditor to a different economic risk than existed when the creditor originally extended credit. Under the horizontal test, in general courts look at whether the transaction was of the sort commonly undertaken by companies in the industry. The primary focus is on the debtor's pre-petition business practices and conduct." *In re Patriot Place, Ltd.*, 486 B.R. 773, 793 (Bankr. W.D. Tex. 2013).

32.     The nature of the Debtors' businesses and the extent of their operations make the continued access to obtain fuel by the use of the Comdata Fuel Cards essential.  The Debtors' drivers need to be able to re-fuel in order to perform the services to the Debtors' customers. The prompt payment of the Fuel Cards is therefore crucial for the orderly and

efficient operation of the Debtors' business.  Failure to pay the Fuel Cards would lead to the

Debtors' inability to obtain fuel and disrupt the delivery of goods that would lead to irreparable

harm to the Debtors' businesses and bankruptcy estates.  Correspondingly, the prompt payment

of the Corporate Cards would allow the Debtors to maintain a positive relationship with Comdata

to secure the continued use of the both the Corporate Cards and Fuel Cards; furthermore, it

would also allow the Debtors to maintain the full credit limit of $200,000 to operate in the post-

petition period and ensure the Debtors' business will not be disrupted by the credit limit being

reached and charge authorization denied to drivers attempting to refuel.

33.     Finally, it would be inequitable for the Debtors' drivers to suffer personal liability

of what are the Debtors' legitimate business expenses.  It would also be bad for morale as well

as the Debtors' reputation if their drivers end up bearing the obligations of the company.

34.     Accordingly, the Debtors submit that the requested relief represents a sound

exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable

harm, and is justified under section 363(b) of the Bankruptcy Code.  Satisfaction of prepetition

obligations owed to Comdata and the City of LaPorte is vital to the Debtors' continued business

operations.

**B.     The Court May Also authorize Payment of Critical Vendors Under Section 105(a) of
the Bankruptcy Code and the "Necessity of Payment" Doctrine**

35.     Finally, the Debtors submit that payment of prepetition obligations owed to

Comdata and the City of LaPorte is necessary and appropriate and is authorized under section

105(a) of the Bankruptcy Code pursuant to what is referred to interchangeably as the 'doctrine

of necessity" or "necessity of payment rule". Pursuant to section 105(a) of the Bankruptcy Code,

"[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry

out the provisions of this title."  11 U.S.C. § 105(a).  When invoking the equitable powers of

section 105(a), the Court must rely upon a specific provision of the Bankruptcy Code.  *In re

Oxford Mgmt., Inc.*, 4 F.3d 1329, 1334 (5th Cir. 1993); *In re CoServ, L.L.C.*, 273 B.R. 487, 497

(Bankr. N.D. Tex. 2002).  As set forth in *CoServ*, sections 1107(a) and 1106 of the Bankruptcy

Code provide the basis on which the Court may exercise the equitable powers of section 105(a)

to grant the relief requested herein.

36.     Section 1107(a) of the Bankruptcy Code requires the Debtor, as a debtor in

possession, to perform all the functions and duties of a trustee under the Bankruptcy Code.

"Implicit in the duties of a Chapter 11 trustee or debtor in possession as set out in Sections 1106

and 704 of the Bankruptcy Code is the duty of such a fiduciary to protect and preserve the

estate, including an operating business's going-concern value."  *In re CoServ*, 273 B.R. at 497.

Thus, "it is only logical that the bankruptcy court be able to use Section 105(a) of the Code to

authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the

estate."  *Id.*

37.     Courts have developed the "Doctrine of Necessity" for use in determining

whether payment of prepetition obligations is permissible.  *See In re CoServ*, 273 B.R. at 497

(recognizing the "doctrine of necessity"); *In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D. Tex.

2003) (same and *citing In re CoServ*); *see also In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570,

581 (3d Ci. 1981) (holding that a court may authorize payment of prepetition claims if such

payment is essential to debtor's continued operation); *In re Just for Feet, Inc.*, 242 B.R. 821,

824-25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory

basis for payment of pre-petition claims" under the doctrine of necessity).  The doctrine

generally provides that a debtor may pay prepetition obligations if payment of such obligations is

critical to the debtor's reorganization.  In *CoServ*, the Court analyzed the Doctrine of Necessity

and adopted a three-element test the debtor must meet to satisfy the "necessity" requirement:

> First, it must be critical that the debtor deal with the claimant.
> Second, unless it deals with the claimant, the debtor risks the
> probability of harm, or, alternatively, loss of economic advantage to
> the estate or the debtor's going concern value, which is
> disproportionate to the amount of the claimant's prepetition claim.
> Third, there is no practical or legal alternative by which the debtor
> can deal with the claimant other than by payment of the claim.

38.     The doctrine of necessity functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.

39.     The Court's power to utilize the "doctrine of necessity" in chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). "[T]he debtor-in-possession's role as the equivalent of a trustee under § 1107(a) and its duty to protect the going-concern value of an operating business in a Chapter 11 provide[s] the 'bridge that makes application to the Doctrine of Necessity 'necessary or appropriate to carry out the provisions of' the Bankruptcy Code.'" *In re CEI Roofing, Inc.*, 315 B.R. 50, 56 (Bankr. N.D. Tex. 2004) (*citing In re CoServ*, 273 B.R. at 497). Accordingly, the Court has expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of the Debtor's assets. *See In re Young*, 416 F. App'x 392, 398 (5th Cir. 2011) (recognizing that "[s]ection 105(a) of Title 11 permits the bankruptcy court to exercise broad authority"); *In re Nixon*, 404 F. App'x 575, 578 (3d Cir. 2010) (citation omitted) ("It is well settled that the court's power under § 105(a) is broad."); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) (citation omitted) (noting that section 105 of the Bankruptcy Code "has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings"); *In re Trevino*, 599 B.R. 526, 542-43 (Bankr. S.D. Tex. 2019) (noting that the bankruptcy court has "broad authority" under section 105(a) of the Bankruptcy Code); *In re Padilla*, 379 B.R. 643, 667 (Bankr. S.D. Tex. 2007) (citation omitted) ("Section 105(a) gives bankruptcy courts broad authority to take actions necessary and appropriate for administering and enforcing the Bankruptcy Code and . . . 'authorizes a bankruptcy court to fashion such orders as are necessary to further the purposes of the substantive provisions of the Bankruptcy Code.'"); *see also Chinichian v. Campolongo (In*

*re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) (citation omitted) ("Section 105 sets out the

power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the

Bankruptcy Code.").

40.     The doctrine of necessity is frequently invoked early in a reorganization,

particularly in connection with those chapter 11 sections that relate to payment of prepetition

claims.  For instance, the court in *In re Structurelite Plastics Corp.* indicated its accord with "the

principle that a bankruptcy court may exercise its equity powers under § 105(a) to authorize

payment of prepetition claims where such payment is necessary to 'permit the greatest

likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'" *In

re Structurelite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (citations omitted). The

court stated that a "per se rule proscribing the payment of prepetition indebtedness may well be

too inflexible to permit the effectuation of the rehabilitative purposes of the Code." *Id.* at 932.

Accordingly, pursuant to section 105(a) of the Bankruptcy Code, the Court is empowered to

grant the relief requested herein.

41.     To avoid the irreparable harm that would occur absent payment of the Debtors'

obligations to Comdata whose cards provide the means for the Debtors' drivers to obtain

necessary fuel, the Debtors request authority to exercise their reasonable business judgment

and pay the prepetition amounts owed to Comdata.  Additionally, to avoid the inequity of the

Debtors' drivers personally being saddled with what are the Debtors' business expenses and

the potential of the Debtors' reputation being harmed for allowing that to happen, the Debtors

request authority to exercise their reasonable business judgment and pay the outstanding fines

imposed prepetition by the City of LaPorte.

## WAIVER OF BANKRUPTCY RULE 6004(h)

42.     Federal Rule of Bankruptcy Procedure 6003 prohibits the Court from granting

certain relief, including a request to use property of the estate, within twenty-one (21) days of

the Petition Date unless such relief "is necessary to avoid immediate and irreparable harm."

Fed. R. Bankr. P. 6003.  Granting the relief requested herein is integral to the Debtors' ability to transition into operating as a debtors-in-possession in chapter 11.  If this Motion is denied, the Debtors' operations could be seriously disrupted at this critical juncture.  Therefore, the Debtors assert that the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 is satisfied in this instance.

43.      Given the emergency need for relief requested herein, and to implement the foregoing successfully, the Debtors seek a waiver of the requirements under Bankruptcy Rule 6004, including the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

## **LIMTIED NOTICE**

44.      Notice of this Motion has been provided to (a) the office of the United States Trustee for the Northern District of Texas, (b) the Debtors' prepetition secured lenders, (c) Comdata, (d) the holders of the twenty (20) largest unsecured claims against the Debtors, and (e) parties filing a notice of appearance, as set forth in the below Certificate of Service.  Under the Bankruptcy Code, the Bankruptcy Rules, and the N.D. Tex. L.B.R., the Debtors submit that no other further notice need be provided.

## **PRAYER**

WHEREFORE, the Debtors respectfully request entry of an order granting (a) the relief requested herein and (b) such other and further relief as is just and proper.  A copy of the Debtors' proposed order granting this Motion is attached hereto as **Exhibit C.**

Dated: November 20, 2022                    Respectfully submitted,

/s/ Emily S. Chou

Jeff P. Prostok
State Bar No. 16352500
Lynda L. Lankford
State Bar No. 11935020
Emily S. Chou
State Bar No. 24006997
Dylan T.F. Ross

State Bar No. 24104435
FORSHEY & PROSTOK, L.L.P.
777 Main Street, Suite 1550
Fort Worth, Texas 76102
Phone: (817) 877-8855
Fax: (817) 877-4151
jprostok@forsheyprostok.com
llankford@forsheyprostok.com
echou@forsheyprostok.com
dross@forsheyprostok.com

PROPOSED ATTORNEYS FOR THE
DEBTORS AND DEBTORS-IN-POSSESSION

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via ECF electronic Notice, if available, on November 20, 2022, and will be served upon the parties listed on the attached service list via United States Mail, first class postage prepaid, on November 21, 2022.

/s/ Emily S. Chou
Emily S. Chou

# EXHIBIT A
## (Fuel Card Invoices)

# COMDATA
Payment Innovation

## CONSOLIDATED INVOICE

Page 1 of 7

NATURAL GAS LOGISTICS, IN
10733 SPANGLER DRIVE
DALLAS, TX  75220

**ACTIVITY FOR 11/17/22 THROUGH 11/17/22**

| | |
|---|---|
| **ACCOUNT CODE:** | T-742 |
| **INVOICE DATE:** | 11/18/22 |
| **DUE DATE:** | 11/24/22 |
| **TOTAL DUE:** | $75,064.52  U.S. |

| PRODUCTS | CUSTID | CUSTOMER NAME | REFERENCE # | AMOUNT | CURRENCY |
|---|---|---|---|---|---|
| Comdata Direct | 53246 | NATURAL GAS LOG DBA GREENPATH | | $8,676.90 | U.S. |
| EC EXPRESS CODE | 53246 | NATURAL GAS LOG DBA GREENPATH | | $4,860.97 | U.S. |

### YOUR COMDATA INVOICE SAVINGS SUMMARY:

| | |
|---|---|
| $.05 Per Gallon Cash Price Savings*: | $128.70 |
| Fuel Discount Savings: | $0.00 |
| Total Savings for this Invoice Period: | $128.70 |
| Your Year to Date Savings: | $56,392.83 |

\* Based on estimated savings of $.05 per gallon purchased for paying cash price versus credit.

| | TOTAL CHARGES | $13,537.87 | U.S. |
|---|---|---|---|

| | AMOUNT | CURRENCY |
|---|---|---|
| **PREVIOUS BALANCE** | $61,526.65 | U.S. |
| **PAYMENTS/ADJUSTMENTS** | $.00 | U.S. |
| **NEW ACTIVITY** | $13,537.87 | U.S. |
| **BALANCE** | $75,064.52 | U.S. |

CREDIT LIMIT:   $40,000.00

- - - - - - - - - - - - - - - - - ✂ - - - - - - - - - - - - - - - - - - - - - -

LATE FEE WILL BE ASSESSED IF PAYMENT IS NOT RECEIVED ON OR BEFORE THE DUE DATE.
CANADIAN CURRENCY CHARGES MUST BE PAID IN CANADIAN FUNDS.

PLEASE RETURN THIS COPY WITH YOUR PAYMENT

MAKE PAYMENTS PAYABLE TO COMDATA CORPORATION:

CHECK PAYMENTS TO:   COMDATA
P. O. BOX 845738
DALLAS TX 75284-5738

WIRE PAYMENTS TO:   ACCOUNT

FOR PAST DUE INQUIRIES:   CALL   800-282-7496
FAX   615-370-7562
EMAIL   credcoll@comdata.com
FOR ALL OTHER INQUIRIES:   CALL   800-282-7496

IF PAYING BY CHECK, PLEASE RETURN THIS COPY WITH YOUR PAYMENT.
IF PAYING ELECTRONICALLY, FAX DETAIL TO 615-370-7373 OR EMAIL DETAIL TO cashapp@comdata.com.
INDICATE ANY ADDRESS CHANGES ABOVE

T-742

| **TOTAL DUE:** |
|---|
| $75,064.52  U.S. |

**PAY THIS AMOUNT**

# COMDATA
Payment Innovation

**CONSOLIDATED INVOICE**

Page 1 of 14

NATURAL GAS LOGISTICS, IN
10733 SPANGLER DRIVE
DALLAS, TX  75220

**ACTIVITY FOR 11/17/22 THROUGH 11/17/22**

| | |
|---|---|
| ACCOUNT CODE: | L-666 |
| INVOICE DATE: | 11/18/22 |
| DUE DATE: | 11/24/22 |
| TOTAL DUE: | $25,147.14  U.S. |

| PRODUCTS | CUSTID | CUSTOMER NAME | REFERENCE # | AMOUNT | CURRENCY |
|---|---|---|---|---|---|
| Comdata Direct | CLG5H | NATURAL GAS LOG, DBA GREENPATH | | $1,748.91 | U.S. |
| Mastercard | CLG5H | NATURAL GAS LOG, DBA GREENPATH | | $2,088.69 | U.S. |

| | TOTAL CHARGES | $3,837.60 | U.S. |
|---|---|---|---|

| | AMOUNT | CURRENCY |
|---|---|---|
| PREVIOUS BALANCE | $21,309.54 | U.S. |
| PAYMENTS/ADJUSTMENTS | $.00 | U.S. |
| NEW ACTIVITY | $3,837.60 | U.S. |
| BALANCE | $25,147.14 | U.S. |

AMOUNTS BELOW ARE REFLECTED IN THE BALANCE
DISCOUNT EARNED THIS PERIOD        $2.95-   U.S.

CREDIT LIMIT:        $50,000.00
AVAILABLE LIMIT:     $24,852.86

---

LATE FEE WILL BE ASSESSED IF PAYMENT IS NOT RECEIVED ON OR BEFORE THE DUE DATE.
CANADIAN CURRENCY CHARGES MUST BE PAID IN CANADIAN FUNDS.

L-666

PLEASE RETURN THIS COPY WITH YOUR PAYMENT

MAKE PAYMENTS PAYABLE TO CARD SERVICES:

CHECK PAYMENTS TO:        COMDATA
                         P. O. BOX 845738
                         DALLAS TX 75284-5738

WIRE PAYMENTS TO:
                         ACCOUNT #

| TOTAL DUE: |
|---|
| $25,147.14  U.S. |

**PAY THIS AMOUNT**

FOR PAST DUE INQUIRIES:     CALL    800-282-7496
                            FAX     615-370-7562
                            EMAIL   credcoll@comdata.com
FOR ALL OTHER INQUIRIES:    CALL    800-282-7496

IF PAYING BY CHECK, PLEASE RETURN THIS COPY WITH YOUR PAYMENT.
IF PAYING ELECTRONICALLY, FAX DETAIL TO 615-370-7373 OR EMAIL DETAIL TO cashapp@comdata.com.
INDICATE ANY ADDRESS CHANGES ABOVE

ANY TRANSACTION OCCURING AT A COMDATA PROPRIETARY LOCATION MAY INCUR A FEE.
IF YOU HAVE ANY QUESTIONS ABOUT THIS FEE, PLEASE CONTACT YOUR COMDATA
SALES REPRESENTATIVE.



**COMDATA**
Payment Innovation

**CONSOLIDATED INVOICE**

Page 1 of 4

NATURAL GAS LOGISTICS, IN
10733 SPANGLER DRIVE
DALLAS, TX  75220

**ACTIVITY FOR 11/17/22 THROUGH 11/17/22**

| ACCOUNT CODE: | L-41N |
|---|---|
| INVOICE DATE: | 11/18/22 |
| DUE DATE: | 11/24/22 |
| TOTAL DUE: | $2,428.75  U.S. |

| PRODUCTS | CUSTID | CUSTOMER NAME | REFERENCE # | AMOUNT | CURRENCY |
|---|---|---|---|---|---|
| Comdata Direct | 80841 | TEXAS GAS TRANSPORT | | $1,051.27 | U.S. |
| EC EXPRESS CODE | 80841 | TEXAS GAS TRANSPORT | | $300.70 | U.S. |

**YOUR COMDATA INVOICE SAVINGS SUMMARY:**

| | |
|---|---|
| $.05 Per Gallon Cash Price Savings*: | $10.85 |
| Fuel Discount Savings: | $130.15 |
| Total Savings for this Invoice Period: | $141.00 |
| Your Year to Date Savings: | $16,366.79 |

\* Based on estimated savings of $.05 per gallon purchased for paying cash price versus credit.

| | TOTAL CHARGES | $1,351.97 | U.S. |
|---|---|---|---|

| | AMOUNT | CURRENCY |
|---|---|---|
| PREVIOUS BALANCE | $1,076.78 | U.S. |
| PAYMENTS/ADJUSTMENTS | $.00 | U.S. |
| NEW ACTIVITY | $1,351.97 | U.S. |
| BALANCE | $2,428.75 | U.S. |

CREDIT LIMIT:    $10,000.00
AVAILABLE LIMIT:    $7,571.25

A LATE FEE AND FINANCE CHARGE MAY BE ASSESSED
IF PAYMENT IS NOT RECEIVED ON OR BEFORE THE DUE DATE.
MANUAL REPORT FEE IS $20.00 PER BILLING CYCLE.
CANADIAN CURRENCY CHARGES MUST BE PAID IN CANADIAN FUNDS.

PLEASE RETURN THIS COPY WITH YOUR PAYMENT

MAKE PAYMENTS PAYABLE TO COMDATA CORPORATION:

CHECK PAYMENTS TO:    COMDATA
P. O. BOX 845738
DALLAS TX 75284-5738

WIRE PAYMENTS TO:    ████████████████
ACCOUNT #███████████████████

FOR PAST DUE INQUIRIES:    CALL    800-282-7496
FAX    615-370-7562
EMAIL    credcoll@comdata.com
FOR ALL OTHER INQUIRIES:    CALL    800-282-7496

IF PAYING BY CHECK, PLEASE RETURN THIS COPY WITH YOUR PAYMENT.
IF PAYING ELECTRONICALLY, FAX DETAIL TO 615-370-7373 OR EMAIL DETAIL TO cashapp@comdata.com.
INDICATE ANY ADDRESS CHANGES ABOVE

L-41N

| TOTAL DUE: |
|---|
| $2,428.75  U.S. |

**PAY THIS AMOUNT**

# EXHIBIT B
(Corporate Card Invoices)

# COMDATA
Payment Innovation

**CONSOLIDATED INVOICE**

Page 1 of 19

NVG GLOBAL GROUP INC
10733 SPANGLER DRIVE
DALLAS, TX  75220

**ACTIVITY FOR 11/07/22 THROUGH 11/13/22**

| | |
|---|---|
| ACCOUNT CODE: | Q-15W |
| INVOICE DATE: | 11/14/22 |
| DUE DATE: | 11/20/22 |
| TOTAL DUE: | $32,878.58  U.S. |

| PRODUCTS | CUSTID | CUSTOMER NAME | REFERENCE # | AMOUNT | CURRENCY |
|---|---|---|---|---|---|
| Mastercard | DD22N | NGV GLOBAL GROUP | F23181505 | $32,878.58 | U.S. |

| | TOTAL CHARGES | $32,878.58 | U.S. |
|---|---|---|---|

| | AMOUNT | CURRENCY |
|---|---|---|
| PREVIOUS BALANCE | $39,012.10 | U.S. |
| PAYMENTS/ADJUSTMENTS | $39,012.10- | U.S. |
| NEW ACTIVITY | $32,878.58 | U.S. |
| BALANCE | $32,878.58 | U.S. |

CREDIT LIMIT:   $100,000.00
AVAILABLE LIMIT: $67,121.42

✄

LATE FEE WILL BE ASSESSED IF PAYMENT IS NOT RECEIVED ON OR BEFORE THE DUE DATE.
CANADIAN CURRENCY CHARGES MUST BE PAID IN CANADIAN FUNDS.

Q-15W

PLEASE RETURN THIS COPY WITH YOUR PAYMENT

MAKE PAYMENTS PAYABLE TO CARD SERVICES:

| | |
|---|---|
| CHECK PAYMENTS TO: | COMDATA |
| | P. O. BOX 845738 |
| | DALLAS TX 75284-5738 |

WIRE PAYMENTS TO:

ACCOUNT

| | | |
|---|---|---|
| FOR PAST DUE INQUIRIES: | CALL | 800-282-7496 |
| | FAX | 615-370-7562 |
| | EMAIL | credcoll@comdata.com |
| FOR ALL OTHER INQUIRIES: | CALL | 800-282-7496 |

IF PAYING BY CHECK, PLEASE RETURN THIS COPY WITH YOUR PAYMENT.
IF PAYING ELECTRONICALLY, FAX DETAIL TO 615-370-7373 OR EMAIL DETAIL TO cashapp@comdata.com.
INDICATE ANY ADDRESS CHANGES ABOVE

ANY TRANSACTION OCCURING AT A COMDATA PROPRIETARY LOCATION MAY INCUR A FEE.
IF YOU HAVE ANY QUESTIONS ABOUT THIS FEE, PLEASE CONTACT YOUR COMDATA
SALES REPRESENTATIVE.

**TOTAL DUE:**

$32,878.58  U.S.

**PAY THIS AMOUNT**

# EXHIBIT C

(Proposed Order)

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| In re: | Chapter 11 Cases |
| NGV GLOBAL GROUP, INC., | Case No. 22- 42780 |
| NATURAL GAS VEHICLES TEXAS, INC. | Case No. 22- 42781 |
| NATURAL GAS SUPPLY, LLC | Case No. 22- 42782 |
| NATURAL GAS LOGISTICS INC. | Case No. 22- 42783 |
| DEBTORS. | |

**ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF AN ORDER (I)
AUTHORIZING DEBTORS TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS;
AND (II) GRANTING RELATED RELIEF**

On this day the Court considered the *Debtors' Motion for Entry of an Order (i) Authorizing Debtors to Pay Prepetition Expenses Due to Critical Vendors; and (ii) Granting Related Relief* [Docket No. ___] (the "Motion").  Having reviewed the Motion and having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that relief is necessary to avoid immediate and irreparable harm; and having determined the payment

of the prepetition claims requested by the Motion are necessary and essential to maintain the Debtors' businesses in that (a) the vendors are critical to the Debtors; (b) unless the Debtors pay such vendors, the Debtors risk the probability of harm, or, alternatively, loss of economic advantage to its estate or the Debtors' going concern value, which is disproportionate to the amount of the vendors' prepetition claims, and (3) there is no practical or legal alternative by which the Debtors can deal with the vendors other than by payment of the claims; and based on the evidence presented and the arguments of counsel at a hearing on the Motion; the Court hereby finds that the Motion should be granted.

Accordingly, it is hereby **ORDERED** that:

1.      The Motion is **GRANTED**, and the Debtors are authorized, but not directed, to pay the critical vendor obligations (the "Critical Vendor Obligations") as they come due and to the appropriate payee.

2.      The Critical Vendor Obligations include: (a) approximately $102,640.41 in prepetition fuel and road related charges charged on the Fuel Cards and owed to Comdata Inc.; (b) approximately $53,168.08 in charges charged on the Corporate Cards and owed to Comdata Inc.; and (c) fines imposed by the City of LaPorte against the Debtors' drivers that had not been paid as of the Petition Date in the approximate amount of $10,677.00.

3.      The authorizations given to the Debtors in this Order empowers but does not direct the Debtors to effectuate the payments herein, the Debtors retain the business judgment to make or not make said payments, and in all instances subject to the condition that funds are available to make any payment.

4.      The Debtors are authorized to use cash collateral, if any, to the extent necessary to make the payments authorized by this Order.  Notwithstanding anything to the contrary in this Order or the Motion, any payment, obligation, or other relief authorized by this Order shall be subject to the terms, conditions, and limitations of this Court's order approving any cash collateral use, including an approved budget.

5.      The contents of the Motion are deemed to satisfy the requirements set forth in Bankruptcy Rules 6003 and 6004, if applicable, and the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is hereby waived.

6.      This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

**### End of Order ###**

*Service List*
*NGV Global, et al.*
*#6321*

NGV Global Group, Inc., et al.
Attn: Farroukh Zaidi, CEO
10733 Spangler Road
Dallas, TX 75222

Erin Schmidt, Trial Attorney
Office of the U.S. Trustee
1100 Commerce St., Room 976
Dallas, TX 75202

FirstCapital Bank of Texas, N.A.
5580 LBJ Freeway, Suite 100
Dallas, TX 75240

Tom McLeod Software Corp.
100 Corporate Parkway, Suite 100
Birmingham, AL 35242

Ford Motor Credit Company, LLC
PO Box 680020, MD 610
Franklin, TN 37068

Maplemark Bank
4143 Maple Ave., Suite 100
Dallas, TX 75219

Bank of DeSoto, NA
PO Box 7777
DeSoto, TX 75123

Mike Albert, Ltd.
10340 Evendale Dr.
Cincinnati, OH 45241

Mike Albert, Ltd.
c/o Patrick Lynch
Quilling, Selander, et al.
2001 Bryan St., Suite 1800
Dallas, TX 75201

Simmons Bank
4625 S National Ave.
Springfield, MO 65810

Tristate Capital Bank
One Oxford Centre
301 Grant St., Suite 2700
Pittsburgh, PA 15219

Vision Financial Group, Inc.
615 Iron City Drive
Pittsburgh, PA 15205

Internal Revenue Service
Centralized Insolvency Operations
PO Box 21126
Philadelphia, PA 19114-0326

Internal Revenue Service
Special Procedures Staff
Mail Code 5020-DAL
1100 Commerce St., Room 9B8
Dallas, TX 75242

# NGV Global Group, Inc.
# 20 Largest Unsecured Creditors

Addison Group
7076 Solutions Center
Chicago, IL 60677-7000

AFCO
5600 North River Rd.
Suite 400
Rosemont, IL 60018-5187

ANGI
PO Box 516
Janeville, WI 53547-5216

Bridgestone
PO Box 730026
Dallas, TX 75373-0026

Cesar Torres

Champion Pumping LLC
2351 W. Northwest Hwy.
Suite 3358
Dallas, TX 75220

Comdata
5301 Mayland Way
Brentwood, TN 37027

Dallas Regional Chamber
500 N. Akard St., Suite 2600
Dallas, TX 75201

Emeri Construction Group
PO Box 542736
Dallas, TX 75354

Faisal Reza
3604 Barrydale Dr.
Denton, TX 76208

John Ames
1201 Elm St., Suite 2600
Dallas, TX 75270

OSI 10737 Spangler Road LLC
309 East Paces Ferry Rd. NE
Suite 60
Atlanta, GA 30305

OSI 10801 Spangler Road LLC
309 East Paces Ferry Rd. NE
Suite 60
Atlanta, GA 30305

OSI 2001 Manana Drive LLC
309 East Paces Ferry Road NE
Suite 60
Atlanta, GA 30305

Southwest Airlines Federal Credit Union
2430 Shorecrest Dr.
Dallas, TX 75235

Sunwest Communications Inc.
4851 LBJ Freeway
Dallas, TX 75224

Tara Energy
4925 Greenville Ave.
Dallas, TX 75206

TEKSwork
118 South 3rd St.
Williamburg, KY 40769

The Carbon Agency
802 N. Kealy Ave., Suite 200
Lewisville, TX 75057-3136

Wallis State Bank
11135 Harry Hines Blvd.
Dallas, TX 75229

# Natural Gas Vehicles Texas, Inc.
## 20 Largest Unsecured Creditors

1-800-Radiator & A/C
2626 Northhaven Road
Dallas, TX 75229

Cavalier Co.
196 Mark Lane
Royse City, TX 75189

Continental Tire
1830 MacMillian Park Dr.
Fort Mill, SC 29707

Cummins
PO Box 772642
Detroit, MI 48277-2642

Daltex Trailer Repair
3124 Partridge Ct.
Grand Prairie, TX 75052

Fleetpride Truck and Trailer Park
601 W Mockingbird Lane
Dallas, TX 75247

Geoff Beveridge
661 E Main St., Suite 200
Midlothian, TX 76065

GM Financial
PO Box 183593
Dallas, TX 76096-3834

HYLIION
1202 BMC Dr., Suite 100
Cedar Park, TX 78613

Imperial Supplier LLC
PO Box 5362
Janeville, WI 53547-5362

John R. Ames CTA
1201 Elm St., Suite 2600
Dallas, TX 75270

Marcel Pradella
2124 Dogwood Creek Ave.
Yukon, OK 73099

Permier Truck Group of Dallas No.
PO Box 840827
Dallas, TX 75284-0827

Recappers (V)

Rush Enterprises
109 Cundiff Dr.
Seagoville, TX 75159

Snap On
12617 E FM917 Suite E
Alvarado, TX 76009

Southern Tire Mart
816 W Mockingbird Dr.
Dallas, TX 75247

Southwest International Truck (V)
3722 Irving Blvd.
Dallas, TX 75247

U-line
PO Box 88741
Chicago, IL 60680-1741

Unifirst
PO Box 650841
Dallas, TX 75265-0481

Valvoline

Z & Son Transmission
10418 C.F. Hawn Frwy
Dallas, TX 75217

T. J. Yarbourogh
1121 Beechview, Apt. 2213
Dallas, TX 75218

## Natural Gas Supply, LLC
## 20 Largest Unsecured Creditors

Comdata
5301 Mayland Way, Suite 100
Brentwood, TN 37027

## Natural Gas Logistics Inc.
## 20 Largest Unsecured Creditors

Advantage Trailer Rentals
PO Box 772320
Detroit, MI 48277

**Boscus Canada Inc.**
**900 Avenue Selkirk**
**Pointe-Clair QC H9R3S3**

Comdata
5301 Mayland Way
Brentwood, TN 37027

Crossroads Trailer Service Inc.
226 Irby Lane
Irving, TX 75061

Crum & Foster
855 Winding Brook Dr.
Glastonbury, CT 06033

DCLI
3525 Whitehall Park Dr.
Charlotte, NC 02827

Enrique Joya

Escreen
PO Box 25902
Overland Park, KS 66225

Hartford Financial Services
PO Box 415738
Boston, MD 02241-5738

J.J. Keller
PO Box 6609
Carol Stream, IL 60197

Kay Polymer Trucking
1919 FM 565
Baytown, TX 77523

Lockton
PO Box 123036
Dallas, TX 75312-3036

Loves
PO Box 842568
Kansas City, MO 64184

McKinney Trailer Rentals
PO Box 515574
Los Angeles, CA 90051

McLeod Software
Dept. 3500
Birmingham, AL 35283

Mike Hendrixson
4819 Osprey Dr.
Orange Beach, AL 36561

Penske
PO Box 802577
Chicago, IL 60680

Perez Luis Manuel Hernandez
c/o Paul R. Hornung
Domingo A. Garcia PC
1111 W Mockingbird Ln, Ste 1200
Dallas, TX 75247

Republic Services
8101 E. Little York Rd.
Houston, TX 77016

Samba Holdings Inc.
Dept. LA 24536
Pasadena, CA 91185

Tenstreet LLC
5121 S. Wheeling Ave.
Tulsa, OK 74105

Tonya Singh
c/o Jim S. Adler & Associates
2711 N. Haskell, Suite 2500
Dallas, TX 75204

TRAC Intermodal
750 College Road East
Princeton, NJ 08540

Elliott Warren
1215 Adelaide Dr.
Dallas, TX 75216